IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANDRE BRIDGES, # M44731,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:25-cv-00010-MAB |
| | ) |
| **C/O KULICH, MATTHEW DULANEY,** | ) |
| **C/O ANDERSON, SHANE SULSER,** | ) |
| **C/O TAYLOR, VICTOR KIEFER,** | ) |
| **TREVOR ROWLAND,** | ) |
| **and ANTHONY WILLS,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Andre Bridges, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights (Doc. 1). He asserts that Defendants physically and sexually assaulted him. He seeks monetary damages (Doc. 1, p. 20).

The Complaint (Doc. 1) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims.[1] 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an

---

[1] The Court has jurisdiction to screen the Complaint based on Plaintiff's consent to the full jurisdiction of a magistrate judge, and the limited consent by the Illinois Department of Corrections to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

1

immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

A review of the Complaint reveals the following allegations: Plaintiff was housed in Menard's North 2 Restricted Housing Unit, cell # 822, on December 20, 2022 (Doc. 1, p. 14). He smelled smoke and soon realized that a fire had been started somewhere in the unit. Plaintiff started coughing from the smoke; he and other inmates called for help. Defendant Officers Kulich, Dulaney, Anderson, Kiefer, and Sergeants Sulser and Taylor (all members of the Tactical Team) threatened to kill all the inmates while making racial slurs. Delaney and other officers sprayed Plaintiff and others with large amounts of pepper spray, filling his cell with the chemical. Plaintiff tried to wash the spray off his body but found that the water to his cell had been shut off. Plaintiff, who is Black, alleges that Dulaney then asked how he liked that, used a racial slur directed at Plaintiff and then ordered him to cuff up (Doc. 1, p. 15). As Plaintiff complied, he felt the Tactical Team officers snatch his clothes off and felt them making "sexual gestures." *Id.* The Defendants began beating and kicking Plaintiff, spat on him, and one Defendant urinated on Plaintiff. Plaintiff crawled under his bed and felt someone shove his fingers into his anus. He cried and called out "Rape!" *Id.*

According to Plaintiff, Kulich, Dulaney, Anderson, Kiefer, Sulser and Taylor forcibly pulled and dragged Plaintiff out of his cell by his dreadlocks and made him walk with his head down and knees bent. As he walked, Defendants pushed him and smacked his head into the cell bars. When they reached the end of the North 2 gallery, Defendants punched Plaintiff and struck him in the mouth (Doc. 1, p. 15). When he protested, the

officers began kicking and kneeing Plaintiff, pulled his hair and dreadlocks out, and again called him a racial slur. According to Plaintiff, he was knocked unconscious.

When Plaintiff woke up, Defendants pushed him down the stairs and dragged him to the nurse's station. However, Plaintiff alleges that he did not receive medical attention and Defendants took him to another location where they beat him again and pulled out more of his dreadlocks. Dulaney told Plaintiff that he was going to get rid of his dreadlocks and again called him a racial slur (Doc. 1, p. 15).

Defendants placed Plaintiff in another room where he was shackled to a steel seat and received some medical attention while some defendants watched (Doc. 1, p. 16). According to Plaintiff, he tried to sit after the beating but couldn't do so because his anus had been torn open. He requested a rape kit, but Dulaney slapped him and told him to keep quiet. Plaintiff's eye was swollen shut, his lip was split, his jaw was fractured, and his ribs felt swollen. Plaintiff alleges that it was painful for him to breathe. Plaintiff was unable to decontaminate himself from the caustic spray for one or two hours while he was locked in the bullpen area. Defendant Rowland came into the room and threw Plaintiff's dreadlocks (that the other defendants had pulled out) at him and again called him a racial slur (Doc. 1, p. 16). Rowland told Plaintiff he would have to wait for medical attention.

After the shift changed, Plaintiff was taken to a different cell on 6-Gallery where he was forced to "strip out" of his clothes. He claims that he remained there naked, that his skin was burning, and he still had not received medical care. Plaintiff's grievance states he was in that cell without sheets or clothing for 14 days (Doc. 1, p. 7). Plaintiff told

3

Rowland and Warden Wills about the incident via complaints and grievances (Doc. 1, pp. 6-7, 11, 17).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> **Count 1:** **Eighth Amendment excessive force claim against Defendants Kulich, Dulaney, Anderson, Susler, Taylor, and Kiefer for spraying Plaintiff with pepper spray, and sexually and physically assaulting him on December 20, 2022.**
>
> **Count 2:** **Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Kulich, Dulaney, Anderson, Susler, Taylor, Kiefer, Rowland, and Wills for delaying and/or denying Plaintiff medical attention for the injuries he sustained from the assaults of December 20, 2022.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

## Count 1

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

4

very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018); *see also Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010).

Plaintiff alleges that Defendants Kulich, Dulaney, Anderson, Susler, Taylor, and Kiefer came to the housing unit in response to his and other inmates' calls for help after a fire broke out. Plaintiff does not indicate that he created a disturbance or resisted the officers. Plaintiff further alleges the Defendants' use of force was accompanied by racial slurs, gratuitous abuse including urinating and spitting on Plaintiff, and sexual assault. Plaintiff's allegations, which the Court accepts as true at this stage of the case, are sufficient to state a claim for excessive force. Count 1 will proceed against Kulich, Dulaney, Anderson, Susler, Taylor, and Kiefer.

**Count 2**

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Deliberate indifference is demonstrated where a prison official acted or failed to act despite his/her knowledge of a serious risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). A guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Under this authority, Plaintiff has stated a viable deliberate indifference claim against Kulich, Dulaney, Anderson, Susler,

5

Taylor, and Kiefer, who are alleged to have assaulted Plaintiff and then failed to provide him adequate medical attention for the beating or to wash off the pepper spray.

Plaintiff further asserts that Defendant Rowland, who threw Plaintiff's torn-out dreadlocks at him, knew that Plaintiff needed medical attention but told him he would have to "wait on it" (Doc. 1, p. 16). A delay in medical treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016) (collecting cases). Count 2 may also proceed against Rowland.

However, Defendant Warden Wills will be dismissed from Count 2 and from the action. Plaintiff does not allege that Wills was present during any of the events of December 22, 2022, or that Wills was aware of the other defendants' actions or of Plaintiff's need for medical attention at the time. He claims only that he informed Wills about the incident after the fact, via grievances and/or other complaints. To be liable in a § 1983 civil rights action, a defendant must have been personally responsible for the violation of a constitutional right. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). Wills' supervisory role as warden does not make him liable for the misconduct of his subordinate officers. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

The deliberate indifference claim in Count 2 will proceed only against Kulich, Dulaney, Anderson, Susler, Taylor, Kiefer, and Rowlan

### OFFICIAL CAPACITY CLAIMS

Plaintiff raises claims against each defendant in his or her individual and official

capacities (Doc. 1, p. 24). However, claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the individual Defendants are dismissed without prejudice.

### DISPOSITION

The Complaint states colorable claims in Count 1 against Kulich, Dulaney, Anderson, Susler, Taylor, Kiefer, and in Count 2 against Kulich, Dulaney, Anderson, Susler, Taylor, Kiefer, and Rowland. Defendant Anthony Wills is **DISMISSED** from the action without prejudice.

The Clerk shall prepare for C/O Kulich, Matthew Dulaney, C/O Anderson, Shane Susler, C/O Taylor, Victor Kiefer, and Trevor Rowland: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for

sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: April 22, 2025**

>  /s/ Mark A. Beatty
>  **MARK A. BEATTY**
>  **United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least 60 days from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take 90 days or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.